ZARITA SEVERSON, Mother and Next Friend of Bryan Villarreal, a Minor, Plaintiff-Appellant, v. DONNA RING, Defendant-Appellee (David Herborn, Defendant).

Third District   No. 3—92—0789

Opinion filed May 14, 1993.—Modified on denial of rehearing June 18, 1993.

Robert L. Silberstein, of Peoria, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria (Nicholas J. Bertschy, of counsel), for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Zarita Severson, mother and next friend of Bryan Villarreal, filed an amended complaint against the defendant, Donna Ring. The complaint alleged that the defendant was liable for dog bite injuries to Bryan Villareal (Bryan) based upon common law and also based upon section 16 of the Animal Control Act (Ill. Rev. Stat. 1991, ch. 8, par. 366). The plaintiff appeals from an order which granted summary judgment in favor of the defendant on both claims.

The plaintiff raises two issues on appeal: (1) whether summary judgment was properly granted under the facts of this case; and (2) whether the trial court erred in dismissing the plaintiff's original complaint, which was based upon general negligence.

We conclude that summary judgment was properly granted on the plaintiff's statutory cause of action. However, we also conclude that a genuine issue of material fact exists regarding the plaintiff's common law cause of action. The trial court's grant of summary judgment is therefore affirmed in part and reversed in part.

Furthermore, we find that the plaintiff waived any objection to the trial court's dismissal of her original complaint based upon general negligence when she filed her second amended complaint without incorporating therein the allegations of her original complaint. Accordingly, we affirm on this issue.

The plaintiff filed a four-count second amended complaint against the defendant and David Herborn. The amended complaint alleged that Bryan suffered painful and severe injuries to his face when he was bitten by a dog. The incident occurred on May 22, 1990. The dog that bit Bryan was a Siberian husky named Samson.

Counts I and III of plaintiff's second amended complaint were directed against David Herborn, the owner of Samson. In count II, the plaintiff alleged Samson was on the defendant's property and under the defendant's control when Samson injured Bryan. The plaintiff alleged the defendant was liable pursuant to section 16 of the Animal Control Act (Ill. Rev. Stat. 1991, ch. 8, par. 366). In count IV, the plaintiff alleged the defendant was liable under common law because she knew or should have known that Samson had previously attacked a young child "or otherwise had a vicious propensity."

The depositions filed with the trial court show the following took place on May 22, 1990, the day 27-month-old Bryan was bitten by Samson. Herborn brought Samson to the defendant's house and chained the dog to a tree in the defendant's yard. Samson had been on the defendant's property on only one prior occasion, approximately one week before the incident. On May 22, 1990, the defendant allowed Herborn to leave Samson at her property while Herborn left to mow the defendant's mother's lawn. The defendant did not care for Samson or give him food or water. The attack occurred about one-half hour later. The defendant testified she never had any problems with Samson. She said that when Samson was on a chain, she had approached him without any problems. The defendant said that she had never seen Samson growl at, chase or bite anyone. Also, she was not aware that Samson had recently bitten a child on May 2, 1990. The defendant knew that the plaintiff and three young children lived next door. The defendant never restricted the children from coming into her yard. The record shows there was no fence between the adjoining yards.

Herborn testified that Samson was leery of children coming up to him when he was on a chain. One week prior to the incident, Samson had been on a chain at the defendant's house. At that time, Herborn was sitting at a picnic table talking to the defendant. Herborn said he told the plaintiff that he did not give Samson human food and he "wouldn't go near him ***, not when he is chained up." Herborn said that he took care of giving Samson food and water on May 22, 1990. Also, Herborn stated that the defendant did not have to give Samson either food or water on the day of the incident and did not have control over Samson.

The plaintiff was baby-sitting three children and was also taking care of her own three children on May 22, 1990. Amy Elliott, age seven, was one of the children the plaintiff was baby-sitting. Amy said that on the day of the attack, she and four of the other children went outside. Amy saw Bryan petting Samson on its back. She then went over to get her brother. When Amy looked back at Bryan, he was on the ground and Samson was on top of him.

In addition to the deposition excerpts, the plaintiff also filed copies of Tazewell County animal control reports which stated that Samson had previously bitten a two-year-old child on May 2, 1990.

Based upon this evidence, the trial court granted the defendant's motion for summary judgment. The court found the defendant was entitled to summary judgment on count II of the complaint since the defendant was not the "owner" of Samson and because the plaintiff

did not prove peaceable conduct and the absence of provocation. The court found that summary judgment was proper on count IV of the complaint since the defendant did not have notice that Samson was vicious. The plaintiff subsequently voluntarily dismissed the counts of her complaint directed against Herborn. This timely appeal followed.

The plaintiff first contends that the defendant's motion for summary judgment should not have been granted. Plaintiff argues that genuine issues of material fact exist regarding her cause of action. We agree that a genuine issue of material fact exists, but only as to the plaintiff's common law cause of action.

Summary judgment is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. (*Mitchell v. Jewel Food Stores, Division of Jewel Food Cos.* (1990), 142 Ill. 2d 152, 165, 568 N.E.2d 827, 832; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of material fact. If a genuine issue of material fact exists, the party opposing the motion has the right to a jury trial. (*Mitchell*, 142 Ill. 2d at 165, 568 N.E.2d at 832.) In ruling on a motion for summary judgment, the evidence must be strictly construed against the moving party and liberally construed in favor of the opponent. *Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 74, 80-81, 571 N.E.2d 733, 735-36.

■■ We agree with the trial court that summary judgment was proper regarding count II of the complaint, which alleged a statutory cause of action. A cause of action based upon the statute does not require proof of the defendant's knowledge of the dog's vicious nature. (*Steinberg v. Petta* (1986), 114 Ill. 2d 496, 500, 501 N.E.2d 1263, 1265.) To establish a cause of action under section 16 of the Animal Control Act (Ill. Rev. Stat. 1991, ch. 8, par. 366), a plaintiff must prove four elements: (1) injury caused by an animal owned by the defendant; (2) the lack of provocation; (3) peaceable conduct of the person injured; and (4) the presence of the injured person in a place where he has a legal right to be. *Smith v. Pitchford* (1991), 219 Ill. App. 3d 152, 154, 579 N.E.2d 24, 26.

The defendant has not argued that Bryan did not have a right to be on her property. However, the defendant successfully argued before the trial court: (1) that she was not the "owner" of Samson; (2) that the plaintiff did not establish peaceable conduct; and (3) that the plaintiff did not establish the lack of provocation.

The Animal Control Act defines "owner" as "any person having a right of property in a dog or other animal, or who keeps or harbors a

dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him." (Ill. Rev. Stat. 1991, ch. 8, par. 352.16.) The defendant had Samson on her premises, which would seem to fit the statutory definition of "owner." However, the term "owner" has been consistently construed to involve some measure of care, custody or control. *Steinberg*, 114 Ill. 2d at 501-02, 501 N.E.2d at 1265-66; *Papesh v. Matesevac* (1991), 223 Ill. App. 3d 189, 191, 584 N.E.2d 549, 550-51; *Thompson v. Dawson* (1985), 136 Ill. App. 3d 695, 699, 483 N.E.2d 1072, 1075.

Thus, in *Steinberg*, the court found that a landlord was not the "owner" of a dog which he permitted his tenants to keep on his property. (*Steinberg*, 114 Ill. 2d at 502-03, 501 N.E.2d at 1266-67.) Also, in *Thompson*, the court held that the trier of fact could properly find that the defendants were not the "owners" of a stray dog just because they had given the dog food and water. (*Thompson*, 136 Ill. App. 3d at 698-700, 483 N.E.2d at 1074-75.) The question of ownership is usually one for the trier of fact. (*Steinberg*, 114 Ill. 2d at 502, 501 N.E.2d at 1266; *Papesh*, 223 Ill. App. 3d at 191, 584 N.E.2d at 550.) However, summary judgment has been found to be proper in appropriate cases. *Papesh*, 223 Ill. App. 3d at 191, 584 N.E.2d at 550.

■ We determined in *Papesh* that summary judgment was properly granted because there was no evidence that the defendant exercised any level of care, custody or control over the offending dog. (*Papesh*, 223 Ill. App. 3d at 191-92, 584 N.E.2d at 551.) We conclude that the same result is warranted here. In the case at hand, no evidence was presented that the defendant exercised any level of care, custody or control over Samson. It was Herborn who chained Samson to a tree at the defendant's house. Both the defendant and Herborn testified that Herborn gave Samson food and water on the day of the attack. Also, they both testified that the defendant did not take care of Samson.

The plaintiff relies on a rather vague statement in Herborn's deposition that the defendant and her boyfriend would "check" Samson's food and water. However, Herborn clearly stated he took care of Samson's food and water and that the defendant did not need to take care of those matters. Based upon the applicable case law, we conclude there was no question of material fact regarding whether the defendant was the "owner" of Samson. Therefore, summary judgment was properly granted as to count II of the plaintiff's complaint.

Because of this conclusion, we do not need to review the issue of the lack of provocation. However, we note that greeting or petting a

dog does not generally constitute provocation. (See *Smith v. Pitchford* (1991), 219 Ill. App. 3d 152, 154, 579 N.E.2d 24, 26.) Here, the defendant argued that the plaintiff failed to establish the lack of provocation because Amy Elliott testified she did not see what happened *immediately* before Samson attacked Bryan. We do not agree with the defendant's argument. Amy's deposition testimony was clearly sufficient to raise a question of fact regarding the lack of provocation.

Regarding the plaintiff's common law cause of action, we find that summary judgment should not have been granted. The court in *Lucas v. Kriska* (1988), 168 Ill. App. 3d 317, 522 N.E.2d 736, dealt with a situation factually similar to the circumstances before us in the instant appeal. In *Lucas,* a dog owned by someone else was also on the property of the defendant landowner. Following a trial, the jury found that the landowner was liable for the injuries caused by the dog. However, the jury answered a special interrogatory and found that the landowner was not the "owner, keeper, or harborer" of the dog. The court in *Lucas* noted that since the jury found the landowner was not the "owner" of the dog, the landowner could not have been found liable under the Animal Control Act. The *Lucas* court determined, however, that the landowner could be found liable under common law, but only if the plaintiff could show that the landowner had "prior knowledge of the dog's viciousness." (*Lucas*, 168 Ill. App. 3d at 320, 522 N.E.2d at 737.) Here, it has been similarly determined that the defendant was not the "owner" of Samson. However, based upon *Lucas,* the defendant could nevertheless be found liable under the common law if she was aware of Samson's viciousness.

In *Lucas,* the court reversed the judgment against the landowner. The court found there was *no* evidence presented that the landowner knew that the dog "posed a special danger to children or to people generally." (*Lucas*, 168 Ill. App. 3d at 320, 522 N.E.2d at 738.) Here, the plaintiff contends that enough evidence was presented to create a genuine issue of material fact regarding whether the defendant knew that Samson posed a danger to children or to people generally. We agree with the plaintiff's argument. We find that a genuine issue of material fact exists concerning the question of whether the defendant had prior knowledge of Samson's viciousness.

■ Here, evidence was presented that Samson was leery of children coming up to him when he was on a chain. Samson had, in fact, bitten a small child just 20 days prior to this incident. The defendant testified during her deposition that she was not aware of the previous dog bite. The defendant also stated that she never had any problems with Samson and never saw Samson behave in an aggressive manner.

However, according to Herborn's testimony, the defendant was present when he told the plaintiff that he "wouldn't go near [Samson] ***, not when he is chained up." We find that Herborn's statement, which was made in the defendant's presence, may have put the defendant on notice that Samson posed a danger when he was on a chain. Based upon these facts, we conclude that it is for the trier of fact to decide whether the defendant had sufficient notice to be held liable in this case. Therefore, summary judgment should not have been granted on count IV of the plaintiff's complaint.

The plaintiff next argues that the trial court erred in dismissing her original complaint which was based upon general negligence. However, we note that the plaintiff filed her second amended complaint without incorporating therein the allegations of her original complaint. It is well established that allegations in a former complaint which are not incorporated into the final amended complaint are deemed waived. (*Pfaff v. Chrysler Corp.* (1992), 155 Ill. 2d 35, 61.) By filing an amended complaint without incorporating the former allegations, a party waives any objection to the trial court's dismissal of the former complaint. (*Pfaff*, 155 Ill. 2d at 61; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153-55, 449 N.E.2d 125, 126-27.) Accordingly, the plaintiff has waived this issue, and we will not consider it on appeal.

For the reasons indicated, the judgment of the circuit court of Tazewell County is affirmed in part and reversed in part. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

BRESLIN and LYTTON, JJ., concur.